## John J. Rosenbury v. Rensselaer T. Angell.

In trespass *de bonis*, the defense that the goods were taken under attachment against a third person alleged to be the owner, is not admissible under the general issue, without notice.

A special notice of such defense that "three several writs of attachment were issued out of the circuit court for the county of L., and under the seal thereof, in due form of law," giving the names of the parties, and the dates and command of the writs, and the taking of the property by virtue thereof, is sufficient, without alleging the making of the affidavits which authorized the attachments; and the attachments, as well as the writs, may be given in evidence.

A special notice of defense that apprises the plaintiff with reasonable certainty of the matter of defense, so that he may not be taken by surprise on the trial, is sufficient under the statute.

Where a party claiming property alleged to have been transferred to him for the purpose of defrauding creditors, was inquired of by a creditor as to his responsibility, and referred the creditor to the business men of a place where he had formerly resided to ascertain in regard to such responsibility, — *Held*, That this reference did not authorize the statements of the business men of such place, made in answer to the inquiries of the creditor, to be given in evidence on behalf of the officer who subsequently attached such property at the suit of the creditors.

*Heard June 10th and 11th.   Decided June 15th.*

ROSENBURY *v.* ANGELL.

Error to Livingston Circuit.

The action was trespass by Rosenbury against Angell, for breaking and entering the plaintiff's storehouse in Howell, and taking, carrying away, and converting divers goods, the property of the plaintiff. The defendant pleaded the general issue, and gave notice that he would prove, on the trial, that, at the time of the alleged trespass, the storehouse and goods were the property of, and in the possession of, one Charles A. Wilber, and not of the plaintiff: That the defendant was sheriff of Livingston county: "That, on the said twenty-eighth day of June, A. D. 1855 (the time of the alleged trespass), three several writs of attachment were issued out of the Circuit Court for the county of Livingston aforesaid, and under the seal thereof, in due form of law, — one of them at the suit of Austin F. Williams, William W. Bruce, and Andrew J. Clark, plaintiffs; one of them at the suit of Andrew M. Arcularius, Peter R. Bonnett, and John W. Schenck, plaintiffs; and one of them at the suit of Charles Widderfield and Henry Cohen, plaintiffs, — each severally against the lands, tenements, goods, chattels, moneys, and effects of the said Charles A. Wilber, who was, and is, defendant in each of said writs respectively; that each of said writs respectively was, and is, directed to the sheriff of the said county of Livingston, and on the day of the issuing of the same as aforesaid was delivered to the said defendant as such sheriff aforesaid, in and by each of which said writs respectively the said sheriff was and is commanded, in the name of the People of the state of Michigan, to attach so much of the lands, tenements, goods, chattels, moneys, and effects of Charles A. Wilber, defendant in each of said writs, not exempt from execution, wheresoever the same may be found within the county of Livingston, as will be sufficient to satisfy the demand of the plaintiffs named in each of said writs respectively, and safely keep the same to satisfy any judgment that may be recovered

by the plaintiffs in such attachments; that in obedience
to, and in pursuance of, the exigency of said writs, the
said defendant did attach and take away the property in
the said plaintiff's declaration mentioned, as and for the
property of the said Charles A. Wilber, the defendant in
said writs (if he ever took the same at all); and that, in
pursuance of, and in · obedience to, the exigency of said
writs, he now safely keeps the same (if he keeps the same
at all); and that all of the said several supposed wrongs,
trespasses, and injuries, above in the said plaintiff's declara-
tion mentioned and complained of, were committed (if com-
mitted at all) in the due execution of said writs, and in
the performance of the said defendant's official duties, as
such sheriff aforesaid."

On the trial before a jury, the plaintiff having intro-
duced his testimony and rested his cause, the defendant
offered in evidence the writs of attachment and affidavits
upon which he claimed the same issued, and the return
of said writs in the several cases mentioned in his notice,
against Charles A. Wilber, in the Circuit Court for the
said county of Livingston; to the introduction of which the
plaintiff, objected, That the defendant's plea and notice does
not set forth and allege the making and exhibiting of affida-
vits previous to the issuing of said writs of attachment.
Which objection was overruled by the court; and plain-
tiff excepted; and all of the said writs, affidavits, and
returns were then allowed to be read to the jury as evi-
dence.

Thereupon the defendant offered as a witness one *Gilkin-
son*, who testified, among other things, that, in a conversa-
tion he had with plaintiff after the assignment, the plain-
tiff referred the witness to business men in the village of
Penn Yan, in the state of New York, to ascertain in re-
gard to his pecuniary responsibility.

The witness was then asked by the defendant whether
he afterwards made inquiries of such business men in Penn

Yan concerning the plaintiff's responsibility, and, if so, what he there learned in answer to such inquiries about the plaintiff's responsibility; to which question, and the evidence sought to be obtained from the witness in answer thereto, the plaintiff objected, for the reasons, 1st. That said evidence would be immaterial and irrelevant, being evidence only of the statements of third persons not in any way parties to the suit; 2d. Because the evidence sought to be obtained was not evidence of general reputation, but merely statements of particular persons.

Which objection was overruled by the court, and the said witness testified: "I stopped at Penn Yan on my return, and inquired of business men as to his responsibility, and they told me that Mr. Rosenbury failed in business some fourteen or fifteen years ago, and that he had not paid his debts, and was insolvent, and had since that time been acting as a merchant's clerk for the support of himself and family. I was informed that there were yet old judgments hanging over him, and that if he had accumulated property they did not know it; that they regarded him as insolvent."

To which decision, admitting the same in evidence, the plaintiff excepted.

Verdict having been rendered for defendant, and judgment given thereon, plaintiff removed the cause to this court, for review on the exceptions.

*S. T. Douglass*, for plaintiff in error:

1. The justification under the writs was inadmissible under the general issue. — 1 *Chit. Pl.* 502; *Steph. Pl.* 160; 2 *Greenl. Ev.* § 625; 11 *Johns.* 132. The special notice should allege every fact essential to the defense. — 1 *Doug. Mich.* 306; 5 *Ohio*, 169; 13 *Johns.* 475; 16 *Ill.* 283; 5 *Fos.* 114; 2 *Duer*, 176; 22 *Me.* 160; 21 *Pick.* 404. The proceeding by attachment being special and statutory, jurisdictional facts will not be presumed (1 *Doug. Mich.* 384),

but must be averred. — 3 *Mass.* 310; 19 *Wend.* 283; 2 *Blackf.* 429; 1 *Doug. Mich.* 199.

2. Gilkinson's evidence of what the business men of Penn Yan told him about the plaintiff's responsibility, was inadmissible. It comes within none of the exceptions to the general rule excluding hearsay testimony. The cases in which one party agrees to be bound by the statement or oath of the other—such as those in *T. Raym.* 153; *Peake's Cas.* 187; 1 *Camp.* 366, *note*; 1 *Esp.* 178; 1 *Bay*, 458; 18 *Johns.* 337—have no application, but proceed upon wholly distinct ground. See, especially, the last case.

*G. V. N. Lothrop*, for defendant in error:

1. It was not necessary to aver any thing but the process of a court of general jurisdiction. It will be intended that a lawful writ is meant. The particulars necessary to constitute a lawful writ are matters of evidence. — 1 *Chit. Pl.* 221; 2 *Doug. Mich.* 507; 8 *Cow.* 314; 19 *Johns.* 33; 3 *Wend.* 268; 16 *Wend.* 38, *per Bronson J.*; 10 *B. & C.* 202. But the notices were mere surplusage. The whole evidence was admissible under the general issue. — 1 *Chit. Pl.* 527; 1 *Hill*, 267.

2. The plaintiff in error having expressly referred the witness Gilkinson to the business men of Penn Yan, their statements may be given in evidence against him as much as if they were his own admissions. — 1 *Greenl. Ev.* §§ 27, 182; 1 *Camp.* 364; 1 *Esp.* 178; 5 *Esp.* 145; 1 *Bay*, 458; 3 *C. & P.* 532; 1 *Cow. & Hill's Notes*, 180, 188, 209; 1 *Phil. Ev.* 100, 101.

The object was not to give evidence of *general reputation* at all, but, on the other hand, the statements of persons to whom the plaintiff had referred the witness.

CHRISTIANCY J.:

The first error relied upon in this case presents the question, 1st. Whether, under the general issue, without notice,

it was competent for the defendant to introduce in evidence the writs of attachment, with the affidavits annexed; and if not, 2d. Whether the notice which accompanied the plea was sufficient to authorize the evidence in question.

It is contended by the counsel for the defendant that, as the defense set up in the notice denied both the property and the possession of the plaintiff, it was admissible under the general issue without notice.    Doubtless this defense did amount to the general issue, without reference to the writs of attachment; and, if found for the defendant, would render the writs entirely immaterial.    But the proposition — that the writs were therefore admissible under the general issue — is circular, and its orbit and its fallacy may be readily demonstrated: Thus, if to authorize the evidence, it be necessary to look to the defense set up in the notice, then the notice itself must be necessary.    The question whether the proposed evidence was admissible under the general issue, *without notice*, is not to be determined by the defense set up in the notice, but by the nature of the evidence proposed — in all respects, as if no notice had been given.

It is well settled that, at common law, a justification of this kind, in an action of trespass, must be pleaded specially; and by the practice before the statute, notice of it must have been given; and the statute (*Comp. L. ch.* 124, § 24) requires a notice in all cases where a special plea or notice would have been required before.    It is therefore clear that the proposed evidence was not admissible under the general issue, without notice.

. . But, 2d. Was the notice sufficient to warrant its introduction?

The only objection to the sufficiency of the notice in this respect is, that it did not mention the affidavits required by law to be annexed, and which, in this case, were annexed, to the writs.    And it is contended that, as the writs could . be no justification without the affidavits, these were just as

ROSENBURY *v.* ANGELL.

essential as the writs, and notice of them should have been given, to warrant their introduction, or that of the writs themselves.

The rule generally laid down as a test of the sufficiency of a notice under the general issue has been, that the notice should contain all that would be necessary to sustain a special plea on general demurrer; and such was the rule laid down by the Supreme Court of this state in *Thompson v. Bowers*, 1 *Doug. Mich.* 321. But this decision was not made under a statute like that applicable to the present case; and most of the decisions cited by counsel in support of the rule, were under statutes, or rules of practice, differing somewhat from our present statute upon the subject. This statute, after having expressly abolished all special pleas in bar, enacts, that, to entitle a defendant to avail himself of such matter of defense, he "shall annex to his plea of the general issue a notice to the plaintiff, briefly stating the precise nature of such matter of defense."

The objects of a special plea were twofold: 1st. To apprise the plaintiff of the nature of the defense relied upon, so that he might be prepared to meet it, and to avoid surprise on the trial; and, 2d. That an issue of fact might be formed upon it, or growing out of it, if the plaintiff chose to do so; or of law, if he chose to admit its truth by demurrer; and, as judgment on demurrer must be a judgment upon facts admitted on the record, by the parties in their pleadings, it was necessary the matters of fact should be set out with such certainty as to enable the court to decide without the necessity of finding, or supplying by intendment, facts not necessarily included in those thus admitted.

But the Legislature, in abolishing special pleas, have entirely dispensed with this last object of such pleas, requiring by the notice only the first, viz. that the plaintiff, by the notice, shall be apprised of "the nature of such matter of defense," that he may not be taken by surprise on the trial, by a defense which he could not with reasonable certainty anticipate.

No issue is formed upon the notice; the only issue in the case is the general issue. The notice is of matters intended to be introduced *under that issue.*

Such being the only object of the notice, its sufficiency ought to be tested solely with reference to that object, rather than by reference to rules applicable to a demurrer to a special plea. The test of a general demurrer, it is true, may, and in most cases probably would, produce the same result (as it certainly did in *Thompson v. Bowers*), but not necessarily in all cases; and as in principle it is not the true test, we think it can not be allowed to prevail where it comes in conflict with the test above indicated.

Did, then, the notice in this case sufficiently indicate the nature of the intended defense? Did it apprise the plaintiff, with reasonable certainty, that the affidavits annexed to the writs would be offered in evidence? and was the plaintiff likely in any way to be misled by the omission to mention them in the notice?

We think he was notified with reasonable certainty, and that he could not have been surprised by this omission. It is true defendant justified the taking under the writ, as he must, and not under the affidavits. But the notice of the writs, and the justification under them, ought, we think, for all purposes of such notice, to be held notice of every thing necessary to make them writs of attachment; and without the affidavits made on the same day, and substantially contemporaneous with the writs, the writs would have been waste paper; they would have been in no sense writs of attachment. — See *Buckley v. Lowry*, 2 *Mich.* 418. When, therefore, the plaintiff received notice that the writs of attachment would be offered in justification, he must have anticipated the affidavits also, without which the writs could have no existence. To hold otherwise would be adopting a degree of technical nicety, calculated to defeat, rather than to promote, the ends of justice.

The second error relied upon is, that the witness Gil-

kinson was allowed to testify to the statements made by business men of Penn Yan, in reference to the responsibility of Rosenbury, the plaintiff.

We judge from the case, though it is not very clearly stated, that the property in question in the suit was a stock of goods formerly owned by a merchant, Wilber, who had failed, and assigned them to the plaintiff: That the creditors claimed the assignment to be fraudulent, and sought to show that the plaintiff was a man of no pecuniary responsibility, as a circumstance going to prove the fraudulent intent of the assignment. The witness Gilkinson, who was a partner of a firm who were attaching creditors, having testified that, in a conversation he had with plaintiff after the assignment, the plaintiff referred him to business men in the village of Penn Yan, in the state of New York, to ascertain in regard to his pecuniary responsibility, was then asked by defendant, whether he afterwards made inquiries of such business men in Penn Yan, concerning the plaintiff's responsibility, and, if so, what he there learned?

To this the plaintiff objected, but the court admitted the evidence, and allowed the witness to testify generally, as to what business men in Penn Yan had told him in reference to the plaintiff's former history and pecuniary responsibility.

It will be noticed, from this statement, that the assign- ment had already been made to the plaintiff; that his rights to the property, whatever they were, had already attached, and that there is nothing in testimony from which the slightest inference can be drawn that the plaintiff, when he referred the witness to the business men of Penn Yan, proposed or intended, or led the witness to suppose he intended, to make his rights to the property in any respect dependent upon the result of the reference; or that he thereby intended to make, or had made, the business men of a con- siderable commercial town, without distinction, his agents or referees, with authority to determine his rights, or to speak for him; or that any result was proposed by the reference:

the contrary intent is to be inferred from the whole transaction. Under these circumstances, we can discover no principle upon which the evidence could be admitted, without throwing open the door to mere hearsay evidence generally.

It is true there are some English *nisi prius* cases which go far towards sustaining the admission of evidence of this kind, though not, we think, far enough to sustain it in the case before us. And Mr. Greenleaf, *Vol.* 1, § 182, under the head of Admissions, relying upon those cases, lays it down as a rule that "the *admissions* of a third person" are receivable in evidence against a party who has expressly referred another to him for information in regard to an uncertain or disputed matter. "In such cases" (he says) "the party is bound by the declarations of the person referred to, in the same manner, and to the same extent, as if they were made by himself." It is observable here that Mr. Greenleaf entirely ignores the idea of any agency of the party referred to, and yet he calls the declarations of the persons referred to "the *admissions* of third persons." Now, this term "*admissions*," in such a connection, would seem to imply that the person making the admissions must stand in some confidential relation to, or be interested for, or represent the interest of, the party making the reference;—in short, to have authority, in the nature of an agency, to speak for the party making the reference. Upon any other hypothesis, it would seem to be a confusion of ideas to call the declarations of such third person his *admissions*, or the *admissions* of the party referring to him.

Mr. Greenleaf seems to have been led into this loose mode of expressing the rule, by a supposed necessity of laying down the rule broadly enough to include all the *nisi prius* decisions to which he refers, without first determining the question whether all those cases could be reconciled with well established principles of the law of evidence.

The cases of *Daniel v. Pitt*, 1 *Camp.* 366, *note* (6 *Esp.*

74, *S. C.*); *Burt v. Palmer*, 5 *Esp.* 145; and *Hood v. Reeve*, 3 *C. & P.* 532, to which he refers, fall clearly within the principle of Agency; and the terms in which the references were made, show, beyond doubt, that the person referred to had authority to speak for the party, and his intention to be bound by the result.

In the case of *Burt v. Palmer*, Lord Ellenborough states the true principle of the rule with great clearness, that the statement of the person referred to was admissible, "his agency having been clearly made out and established." He refers to the trial of Hastings for the rule, saying it had been there solemnly decided by the twelve judges, "that when a person is referred to, to settle and adjust any account or business, what he says, if it is connected with the account or business which is referred to him, is evidence. "That (said his Lordship) was the case here; and Allen's admission of the debt is binding on the defendant."

Now, this is clear and intelligible; it is both good sense and sound law.

But in the subsequent case of *Williams v. Innes*, 1 *Camp.* 364, decided four years after (cited by Mr. Greenleaf), his Lordship, if we can rely upon the reports, seems to have mistaken, or more probably forgotten, the rule so clearly laid down by himself in *Burt v. Palmer*, as the rule established in the Hastings case, and, what was very unusual with that eminent judge, to have used language so loose and indefinite that it can only be attributed to the haste of a trial at the circuit. Thus he says: "If a man refers another, upon any particular business, to a third person, he is bound by what this third person says or does concerning it as much as if that had been said or done by himself. This was agreed to be law, by all the judges, on the trial of Mr. Hastings." It would seem, from this language, that his Lordship spoke from memory, and that his memory was at fault, or the rule in the Hastings case is capable of assuming very elastic proportions. Here the whole element of agency — the

only element which can sustain that rule — seems to be inadvertently overlooked; and a rule is laid down which will in all cases bind parties by the declarations of any third person to whom any man may refer another for mere inquiry, though the party referring had no idea or intention of giving to such third person any authority to speak for him, or of being bound by his declarations; and the person referred to had no reason to suppose any such intention.

Such a rule would operate as a trap upon parties, and render it wholly unsafe for a man ignorant of, the nature of any facts or transaction in which he might be interested, and honestly desiring to put his neighbor in the way of ascertaining them, to advise him to inquire of any third person whom he might suppose could explain it. It would put an end to all honest mutual inquiries of this kind. Such can not be the law. The learned reporter adds a very significant note to this case of *Williams v. Innes:* that, "upon the recommendation of the Chief Justice, the case was afterwards compromised"; yet it might admit of a question whether the facts of the case did not bring it within the principle of agency; which, however, is not alluded to, and it would seem to require something more than is stated in the report to bring it fairly within the principle.

The case of *Brock v. Kent*, 1 *Camp.* 366, *note*, as there reported, is doubtless a clear departure from the principle of agency recognized in the Hastings case, and in *Burt v. Palmer;* and we can discover no ground upon which it can be maintained, without opening the door to the greatest abuse, and the most dangerous species of evidence. Whether this case was also compromised, does not appear. But neither of these cases ever reached the court in bank; nor, as far as we can discover, has any English court, sitting in bank, ever recognized the principle said to have been decided in these cases; and they do not appear to be recognized as law in England to the extent here claimed for them. Thus Mr. Phillips, in his excellent work on Evi-

dence, *Vol.* 1, *p.* 517 (4 *Am. Ed., by Edwards*), states the rule in question under the head of Agency, and places it upon that ground. I quote his statement of the rule: "So if one party refers another, on a disputed fact, to a third person, *as authorized to answer for him,* he is bound by what his referee answers upon the occasion, as much as if the answer had been given by himself." Here is the rule, with the reason for it; and we think it entirely correct; but the rule thus stated will exclude the declarations of the business men of Penn Yan, admitted in the case before us.

Indeed, there is no case, not even that of *Williams v. Innes,* nor *Brock v. Kent,* which would authorize the declarations given in evidence here; as in those cases the reference was to a single individual by name; and there is not in such case any palpable absurdity in supposing the possibility of an intention to make him the agent of the party making the reference. But where the reference is made to all the business men of a commercial town of several thousand inhabitants, without distinction of name or character, the idea of agency becomes too extravagant to be reconciled with the theory of sanity in the party making the reference.

There may be cases in which the circumstances, and the mode of reference, may be such as to make it a question of fact for a jury, under the charge of the court, to determine whether the reference was intended to make the third person an agent, with authority to speak for the party; but where, as in this case, the court can clearly see that there is *no ground* for such an inference, the declarations can not be admitted on this ground.

I have purposely omitted to speak of this case on the theory of a reference to arbitrators; because, as there is no pretence here that both parties proposed to be bound by the decision, it can not stand upon any such ground, as distinct from that of agency. In fact, the English authorities,

and Mr. Phillips, following those authorities, treat the decisions of arbitrators as falling within the principle of agency (*Phillips Ev. Vol.* 1, *p.* 517, *above cited*); and this is recognised in many American authorities; and, upon final analysis, the decisions of arbitrators, voluntarily chosen, would seem to rest upon this ground. I have also purposely omitted to notice that class of cases where a party has agreed to be bound by the oath of the opposite party, or of a third person, because these cases stand upon different principles, as will be seen by the case of *Brooks v. Ball*, 18 *Johns.* 337, and cases there cited.

There are two American cases (and perhaps others, decided since the publication of Mr. Greenleaf's work, in which the rule laid down by him in section 182, above cited, is quoted with approbation. I refer to *Chapman v. Twitchell*, 37 *Me.* 59; and *Chadsey v. Greene*, 24 *Conn.* 562. But the reference in both these cases brought them clearly within the principle of agency, and showed a clear intent to authorize the person referred to to speak for the party making the reference (and, in the latter case, it would have operated as a fraud upon the opposite party to have held otherwise) The courts were not, therefore, called upon to examine the basis of the rule as laid down by Mr. Greenleaf.

The judgment in this case must be reversed, and a new trial granted.

MARTIN Ch. J. and MANNING J. concurred. CAMPBELL J. did not sit, having been of counsel in the cause.