### Lawrence Myers and another v. David Carr.

*Locality of contract.*—Liquors had been sent from New York to Michigan, to be sold by local agents. Defendant called on the owners in New York, and made a bargain with them for the liquors at a specified price, he paying the freight, and having the excess of "outage," if any, over the original outage, allowed. The owners gave him a letter to their agents in Michigan, stating these facts, which he delivered, and after examining the liquors, took them, and gave his note for the price. It was held, that the sale must be regarded as made in Michigan, and subject to its laws.

*Pleadings: illegal consideration.*—In assumpsit, illegality of consideration between the original parties to a promissory note, may be shown under the general issue. If any notice of a defense under the Prohibitory Liquor Law were necessary, a notice that the note "was given for the purchase price of certain intoxicating liquors, contrary to the statute in such case made and provided," is sufficient. Per MANNING J., CHRISTIANCY J. concurring.

*Pleadings: exemptions from and exceptions in a statute.*— In declaring on a statute, where there is an exception in the enacting clause, the pleader must negative the exception; but where there is no exception in the enacting clause, but an exemption in a proviso to the enacting clause, or in a subsequent section of the act, it is matter of defense, and must be shown by the defendant. Where, therefore, suit is brought for the price of spirituous or intoxicating liquors sold in Michigan, the plaintiffs can not recover, unless they bring themselves within the exemptions of the statute. Per MANNING J.; CHRISTIANCY J. concurring.

*Heard October 8th and 9th. Decided November 10th.*

Case made after judgment, from Washtenaw Circuit.

The declaration was upon a promissory note, with the common counts. Plea, the general issue, with notice "that the defendant will prove, on the trial of this cause, as a defense to said suit, that the promissory note, a copy of which is appended to said declaration, was given for the purchase price of certain intoxicating liquors, contrary to the statute in such case made and provided, and that the said plaintiffs are not *bona fide* holders of said promissory note."

On the trial, plaintiffs put the note in evidence. It was dated at Ypsilanti, April 9, 1862, and payable to the order of plaintiffs, at a banking office in Ypsilanti, on the 14th of November after date, and had been indorsed by the plaintiffs in blank. After showing that the amount due on the note was $213 96, the plaintiffs rested.

In his defense, the defendant testified as follows: "I gave this note for a bill of liquors, purporting to be spirituous or intoxicating liquors." Plaintiffs' counsel objected to this evidence, on the ground that, under his plea and notice, the defendant could not set up the provisions of the Prohibitory Liquor Law of this State; but the evidence was received by the Court. The defendant continued his testimony as follows:

"These liquors were in the city of Ypsilanti, when I made this note and took the liquors. They had been there from the fall before. Blodget had wanted me to buy the liquors — went to the depot for that purpose. I bought a barrel of rum, 35 gallons, a cask of wine, and a barrel of brandy.

"He, Blodget, was anxious to sell them to me; I asked terms; said he would sell on usual terms; did not buy them then. It run along till I was going down to inauguration, when Blodget gave me a letter to the plaintiffs; I stopped at New York city; saw some one who represented himself to be Myers, Jr. I did not buy them in New York of this Myers, Jr.; I bought them when I came back, of Blodget. I met a person in New York who said he was Myers, Jr.; he took me up stairs to show me some samples. He said they sold all their liquors by sample. He asked clerk when liquor was shipped to Wiard. I tasted the sample liquor. He said the Wiard bill was vintage of 1858, and this was same.

"When I came back to Ypsilanti, found Blodget had sold gin; tasted them, thought they were not as good as sample. Blodget insisted I should buy them; Joseph Martin looked at them. Doctor Ashley was there, and made remarks, which discouraged me. The wine was absolutely worthless—brandy good for nothing — rum so worthless I used to give it away to any one dry enough to drink it.

"The man I saw wrote a letter and gave to me; I brought this letter to Ypsilanti and delivered it to Blodget.

After I bought the liquor of Blodget, he asked me for it."

Cross-examination: "I think Joslin was present when I brought the letter into the office. The day I went up, I had the letter in my memorandum book — showed the letter to Blodget, and then put it back, and afterwards gave it to him when he asked me for it. I am not positive whether I handed Joslin the letter. I don't know whether I showed them (Joslin & Blodget) the letter before I purchased the liquor. I think Blodget stated they had received a letter from plaintiffs informing them of my visit. He read it over to me in New York, and I told him I should not purchase the liquors till I had examined them. He said, that as the young man had copied the letter, let it go, and he would be satisfied with any arrangement Mr. Blodget should make. As soon as we got through measuring and tasting the liquors, I loaded them up."

This was all the evidence offered by the defendant, and here he rested his defense.

Thereupon the plaintiffs called as a witness Chauncey Joslin, who testified as follows:

"This is the letter that Mr. Carr brought to my office; the signature is in the handwriting of Lawrence Myers. He delivered the letter in an unsealed envelope, and I read it. I handed the letter to Blodget, and he apparently read it. Blodget told him he had not got the pipe of gin. Carr stated he had bought these liquors of Myers in New York, and had brought this letter to show us about the delivery, and got time that we would not give, and some other terms. He proposed to go and get the liquors. We talked then, that by instructions of the letter we were to deliver the liquors to him, when regaged. He and Blodget left the office together, and were gone from one to two hours, and came back, and Blodget drew note, and Carr signed it, and Blodget asked about the letter, and Carr handed it out.

"I suppose the bill sold to Wiard contained a pipe of gin. The gin was sold by Blodget to Moorman. "Outage" means leakage, shrinkage. What he bought was the Wiard bill, less outage, and the pipe of gin."

The letter referred to by the witnesses was then read in evidence, as follows:

"New York, March 15th, 1861.
Messrs. Joslin & Blodget,
                                    Ypsilanti:

Mr. David Carr, of Belleville, called on us in reference to the bill of merchandise forwarded to C. G. Wiard, and stored by you. We have sold it to him at the invoice cost, say $365, on eight months' credit from date of sale (yesterday), and 7 per cent. interest; he paying freight and charges to your place, and we paying the storage bill: any excess of outage, over the original outage, we will allow, and solicit you to receive note and forward it to us.

         Yours truly,      Lawrence Myers & Co."

A. C. Blodget was also called for the plaintiffs, and testified as follows:

"Carr brought this letter to our office, and presented it. I told him he could not have the pipe of gin; went up and took off wax and tasted them, and he finally concluded to take them. They were delivered to him, and he put them in wagon and took them away; went to office and gave the note for the amount of New York bill, freights added, less outage and gin.

"Carr took them exactly as in that bill, with freights added, except the gin. Carr stated that he doubted whether they were as good as sample tasted in New York. The only doubt he had was whether he would take them, as the gin was gone; said he wanted the gin. Lawrence Myers resides in New York, and Pike in Ohio."

Joseph Martin, testified as follows:

"I was present. Carr inspected the liquors; I think he came into my shop. The rum he doubted whether it

was as good as mine. It was a lower priced rum than mine, but was a fair article of its kind."

This was all the testimony offered by the plaintiffs, and they then withdrew the note, and relied upon the common counts in their declaration.

From the foregoing testimony the Court found the following facts:

*First.* That the plaintiffs were residents of the States of New York and Ohio, and that the sale of the liquors in question was made in the city of New York.

*Second.* That a failure of consideration as to the quality of the goods was not sufficiently proven.

*Third.* That the value of the goods and the interest thereon to the 19th day of June, 1863, was two hundred and thirteen dollars and ninety-six cents; for which amount judgment was rendered for plaintiffs.

*Norris & Ninde,* for defendant:

1. The brandy and wine are proven to have been worthless. This partial failure of consideration should have affected the finding.

2. The note proven and upon which the plaintiff rested his case, with its interest, is the exact sum of the verdict. This note was withdrawn. There is, then, no *proof whatever* of number of gallons, or price per gallon, or of the leakage, or outage, or freights, or value of gin sold, or its amount, or of the charges, or of storage. There is no *data* in the case for the damages, on the count for goods sold and delivered.

3. Interest should not have been allowed. The pleadings and evidence do not justify it:— 7 *Rich.* 118.

4. The contract of sale for these liquors, and the sale, was void. If made in this State, this will be conceded.

As a matter of fact, the sale was made (consummated) in this State:— 2 *Pars. Cont.* 437, 441; 10 *Me.* 400; 2 *Ired.* 36.

As a matter of law, it was made subject to the law of this State, because the place of payment and performance is the place of contract, and these liquors were to be paid for at Ypsilanti: — 13 *Mass.* 23; 17 *Johns.* 511; 19 *N. Y.* 436; 7 *B. Monr.* 577; 8 *B. Monr.* 306; 6 *Pet.* 202; 13 *Pet.* 77; 5 *McLean,* 448; 30 *Miss.* 65; 3 *Strob.* 33; 3 *Story,* 474; 2 *Pars. Cont.* 95–100–102; *Story Confl. L.* § 280; *Story Notes,* § 104 *et seq.*

If the sale had been made in New York — of liquors in esse, when sold — and the laws of New York had been proven, the liquors delivered in New York, and the money to be paid in that State (all which suppositions are negatived in this case), even then it would be a contract injurious to the interests of the citizens of this State, and within the rule in *Story Confl. Laws,* § 244, as applied to western prohibitory liquor laws in 6 *Clark (Iowa)* 410.

5. No judgment can be legally had on common counts for goods sold and delivered, if it appear in evidence that a negotiable promissory note was given by the purchaser for such goods, and received and indorsed in blank by the seller, which note, in fixing the place of payment, has given a defense to the purchaser and maker, not known to the place of sale, or to the original contract of sale. If for any legal cause you can not recover on the note, you can not recover on the original cause of action: — 2 *Am. Lead. Cas.* 184, 186, 188.

*Joslin & Blodget,* for defendants in error:

1. The contract having been made in New York, was a valid contract there, and being good there, is equally valid everywhere: — 1 *Gray,* 536; 3 *Gray,* 482; 2 *Mass.* 84, 89; 3 *Met.* 207; 4 *Johns. Ch.* 487; 1 *Allen,* 484; 2 *Allen,* 266; 8 *Gray,* 584.

2. The plaintiffs insist, that under the plea and notice the defendant could not set up the liquor law: — 11 *Cush.*

130; 1 *B. & Ald.* 94; 1 *Johns.* 304; 7 *T. R.* 27; 2 *Pick.* 139; 17 *Vt.* 145.

3. Though the note was withdrawn from the considera- tion of the Court, as an item in or basis of the plaintiffs' claims for judgment, it was still before the Court as evidence in the case, for any other purpose, and especially as a memorandum, to show the amount of the account, like any other memorandum, signed by either party.

4. There is no evidence to show that plaintiffs and defendant had not given bond, under section 1672 of the Compiled Laws, and were authorized to sell. How, then, does it appear that the sale (if made in Michigan) was in violation of the statute?

MANNING J.:

The Circuit Court erred, we think, in finding from the evidence that the liquors were sold to defendant in the city of New York. The letter from plaintiffs to Joslin & Blodgett, of March 15, 1861, relied on to prove a sale, proves a contract for a sale and nothing more.

To constitute a sale of personal property there must be an actual or symbolical delivery of the property to the purchaser, or what is agreed upon by the parties, or under- stood in the course of trade, to be a delivery. The right of property must pass out of the vendor into the vendee, which is not the case where something remains to be done by the vendor before the delivery can take place. The letter to Joslin & Blodget was not an order on them for the delivery of the property to defendant. Had it been so intended by the plaintiffs, it would have been delivered to defendant, and not inclosed in an envelope and directed to them as plaintiffs' agents. The object of the letter was to inform them of the agreement plaintiffs had made with defendant, and to request them to carry it out by ascertaining the amount that would be due them, receive defendant's note therefor, and forward it to them. Defend-

ant was to be allowed for any excess of outage over the original outage. That is, as explained by the evidence, " leakage, shrinkage." Until this was ascertained, the amount of the note to be given could not be known, nor the delivery take place. Suppose, while defendant was on his way from New York, the liquors had been destroyed by fire, would the loss have fallen on him? Suppose Messrs. Joslin & Blodget had refused to deliver them; could he have maintained replevin or trover for them? We think not. The contract to sell was made in the city of New York, but the sale was consummated in Michigan.

The objection to the evidence to prove that the note was given for intoxicating liquors was not well taken. In assumpsit illegality of consideration between the original parties to a promissory note, may be given in evidence under the general issue. If notice of the defense was necessary, we think the notice given was sufficient, according to the decision of this Court in *Rosenbury v. Angell*, 6 *Mich.* 508, in which it was held that a notice that apprised the plaintiff with sufficient certainty of the defense to prevent his being taken by surprise on the trial, was sufficient.

A still further objection is, that the evidence does not show that plaintiffs were not within the exceptions of the statute, which must be proved, it is said, to show the illegality of the consideration of the note. The language of the statute is, " That no person shall be allowed to manufacture or sell, at any time, by himself, his clerks, servant, or agent, directly or indirectly, any spirituous or intoxicating liquors, or any mixed liquors, a part of which is spirituous or intoxicating, except cider, beer, and wine of domestic manufacture, and except also as hereinafter specified." *Comp. L.* §1661. By a subsequent section, sellers of drugs and medicines whose sole or principal business is the selling of drugs and medicines, on giving

a bond to the People of the State, &c., are allowed to sell spirituous or intoxicating liquors to be used as a medicine, or as a chemical agent in scientific, mechanical or manufacturing purposes, and wine for sacramental purposes: § 1672. And the statute is not to apply to liquors imported under the laws of the United States and sold in the original packages in which they were imported : § 1678. The position of the plaintiffs is, that these several provisions of the statute must be negatived by proof to establish the defense.

In declaring on a statute, where there is an exception in the enacting clause, the pleader must negative the exception; but where there is no exception in the enacting clause, but an exemption in a proviso to the enacting clause, or in a subsequent section of the act, it is matter of defense, and must be shown by the defendant. *Attorney General v. Oakland County Bank, Walk. Ch.* 90; *Teel v. Fonda,* 4 *Johns.* 304; *Hart v. Cleis,* 8 *Johns.* 41 ; 3 *Johns.* 438; 1 *Johns.* 513. An exception excludes in express terms the thing excepted from the statute—leaving it as before the statute. A proviso only exempts a thing within the statute from its operation in certain circumstances, or on certain conditions. The word *except* is not necessary to create an exception, nor the word *provided* an exemption. Other words clearly indicating the one or other intention are sufficient. Cider and beer are excepted from the statute, wines are not. They are included in the words spirituous or intoxicating liquors. Wines of domestic manufacture, and imported liquors in the original packages in which they were imported, are exempted from its operation. All sellers of drugs and medicines are within the statute, while those only are within the exemption who are mentioned in § 1672. We must understand the statute as if it read, except cider and beer; provided wines of domestic manufacture, and imported and other liquors may be sold as hereinafter

provided. It was for plaintiffs to bring themselves within the exemptions of the statute, and not having done so, the judgment of the Court below must be reversed, and judgment be entered for defendant, with his costs in both Courts.

CHRISTIANCY J. concurred.

CAMPBELL J.

I am not entirely satisfied that, under our liquor law, the burden of proof is in general on the seller, to make his sale out to have been legal. I therefore abstain from giving an opinion upon that point, as it is immaterial in the view I take of this case.

I think that, on the facts, the sale must be regarded as subject to the laws of Michigan. The proof shows the liquors had been sent here previously, to be sold by local agents, and of course to be sold in this State. They were to be delivered here, and whatever contract was made between Carr and plaintiffs was knowingly made with the design that he should receive the property where it then was. I do not, therefore, consider it important whether the title absolutely passed in New York by the contract or not (although I think it did not); for it was made with a direct view to take practical effect in Michigan, and the liquor as before mentioned had been introduced into the State for the purpose of such a transfer.

The evidence showed that plaintiffs resided out of Michigan, and therefore negatived the idea that they could be qualified to sell here, as druggists or otherwise, under our statutes. It also showed the liquors to be in part spirits, and even if the sale had been in part of domestic wines, the sale of spirits would vitiate the contract unless that too was lawful. The only lawful sale of spirits, except by qualified persons, must be of imported liquors

in the original package. The burden° of proving their imported character is laid *expressly* on the seller, and no proof was introduced on the subject.

I concur, therefore, in giving judgment for defendant.

MARTIN CH. J. concurred with Justice CAMPBELL.