UNITED STATES *v*. MURPHY & CO. (No. 1637).[1]

1. PLEADING—DEFENSIVE MATTER NEED NOT BE NEGATIVED.

A party pleading a statute need not negative an exception contained in a proviso or amendment in a separate substantive clause, and not in the enacting clause, for this is matter of defense to the plea.

2. PROTEST, SUFFICIENCY OF.

A protest claiming printing paper to be dutiable under paragraph 322, tariff act of 1913, need not deny that it came from a country which imposed an export duty upon it or the material used in its manufacture. To hold this would be to hold that every protest must negative paragraph E of section 4, which levies additional duty upon any dutiable article coming from a country which bestows a bounty upon its exportation.

United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38555.

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument Feb. 10, 1916, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in the present case consists of paper which was imported under the tariff act of 1913.

The collector assessed duty upon the importation at the rate of 25 per cent ad valorem under the provision for all papers not specially provided for in paragraph 332 of the act.

The importers protested against the assessment, claiming the merchandise to be dutiable at 12 per cent ad valorem as printing paper not specially provided for, valued above 2½ cents per pound, under paragraph 322 of the act.

The protest was submitted upon evidence to the Board of General Appraisers, who sustained the same. The Government now appeals.

The following is a copy of the two paragraphs of the tariff act of 1913 thus severally relied upon by the parties:

322. Printing paper (other than paper commercially known as handmade or machine handmade paper, japan paper, and imitation japan paper by whatever name known), unsized, sized, or glued, suitable for the printing of books and newspapers, but not for covers or bindings, not specially provided for in this section, valued above 2½ cents per pound, twelve per centum ad valorem: *Provided, however,* That if any country, dependency, province, or other subdivision of government shall impose any export duty, export license fee, or other charge of any kind whatsoever (whether in the form of additional charge or license fee or otherwise) upon printing paper, wood pulp, or wood for use in the manufacture of wood pulp, there shall be imposed

---

[1] Reported in T. D. 36261 (30 Treas. Dec., 488).

upon printing paper, valued above 2½ cents per pound, when imported either directly or indirectly from such country, dependency, province, or other subdivision of government, an additional duty equal to the amount of the highest export duty or other export charge imposed by such country, dependency, province, or other subdivision of government, upon either printing paper, or upon an amount of wood pulp or wood for use in the manufacture of wood pulp necessary to manufacture such printing paper.

332. Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all post cards, not including American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, twenty-five per centum ad valorem.

The first question which naturally engages our attention relates to the essential character of the paper itself, whether it is printing paper not specially provided for, and also whether it is valued above 2½ cents per pound. Two witnesses were examined upon these issues, and several exhibits were filed with the board. Upon the testimony the board found the paper in question to be such printing paper, and to be valued above 2½ cents per pound. A review of the record is convincing that the board's finding to this effect is clearly sustained by the evidence.

The next question which comes to our attention relates to the sufficiency of the protest as a pleading under paragraph 322, *supra,* and this question is emphasized by the Government in its brief upon this appeal.

As appears above, paragraph 322 contains a proviso that if any country shall impose an export duty or charge of any kind upon printing paper, wood pulp, or wood for use in the manufacture of wood pulp, an additional duty shall be imposed in such case upon printing paper valued above 2½ cents per pound, when imported directly or indirectly from such country, equal to the amount of the highest export duty or other export charge imposed by such country, either upon printing paper, or upon an amount of wood pulp or pulp wood necessary for the manufacture of such printing paper.

The present protest is in the following terms, viz:

·We hereby protest against being compelled to pay 25 per cent duty on printing paper entered by us for consumption 5/28/14 per steamship *Texas,* claiming that the said paper should be assessed for duty at 12 per cent as printing paper valued over 2½ cents per pound under paragraph 322, act of October 3, 1913, entry No. 12655. Sig. 8/11/14.

We pay the excess exacted under compulsion to get possession of the goods, and will hold you and the Government responsible for the return of the same.

It will be observed that the foregoing protest denies the correctness of the rate of duty already assessed upon the merchandise by the collector, and claims that the same should be assessed for duty at 12

per cent as printing paper valued over 2½ cents per pound under paragraph 322, above copied. The protest, however, contains no specific averment that the present merchandise does not come within the terms of the proviso of the paragraph. It does not name the country from which the paper in question was exported, nor does it state that the country of exportation levies no export charge of any kind upon such paper, or upon the wood pulp or pulp wood necessary for the manufacture thereof.

The Government contends that the protest is insufficient in the foregoing particular, and that the importers, when claiming an assessment of their merchandise at the rate of 12 per cent ad valorem under the body of paragraph 322, should specifically negative the application of the proviso to the merchandise by naming the country from which it was exported and stating that no export charges of any kind are imposed by that country upon the exportation of such printing paper, or upon the wood pulp or pulp wood necessary for the manufacture thereof.

The Government also contends that the importers in such case would be bound to sustain these several averments by proper evidence at the trial of the case before the board.

Upon consideration, however, we are convinced that the protest now in question is sufficient to sustain the board's decision in the present case.

The body of paragraph 322, *supra*, in general terms imposes a duty of 12 per cent ad valorem upon printing paper not specially provided for, valued above 2½ cents per pound. The proviso of the paragraph, however, carves out certain exceptions to the general provisions just referred to, and specifies that in certain particular cases a different rule of assessment would obtain. These exceptions are not made to depend upon the characteristics of the merchandise described in the paragraph, but upon circumstances wholly extrinsic thereto. The protestants in the present case, therefore, are in the position of pleaders who bring themselves by the averments of their protest within the general provisions of the paragraph, and in such case they are not required in advance to plead or prove also such special and additional facts as would negative the application of the proviso to the merchandise in question.

Cyclopedia of Law and Procedure (vol. 36, 1238):

Where the enacting clause of a statute contains an exception to the general provisions of the act, a party pleading the provisions of the statute must negative the exception, but where the exception is contained in a proviso, in a separate substantive clause, or in an amendment, the party pleading the statute need not negative the exception, and it is for the other party to set it up in avoidance of the general provisions of the statute.

Cooley, C. J., in Lynch v. The People (16 Mich., 474, 476):

The rule in pleading statutes is stated by Mr. Justice Manning in Myers v. Carr (12 Mich., 63). In declaring on a statute, where there is an exception in the enacting clause, the pleader must negative the exception; but where there is no exception in the enacting clause, but an exception in a proviso to the enacting clause, or in a subsequent section of the act, it is matter of defense and must be shown by the defendant. See also Attorney General v. Oakland County Bank (Walk. Ch., 90).

The foregoing authority is cited with approval in Maxwell Land Grant Co. v. Dawson (151 U. S., 586, 604).

It is interesting to note that paragraph E of section 4 of the tariff act of 1913 provides that whenever any country shall bestow a bounty upon the exportation of any article therefrom, and such article is dutiable under the provisions of the act, then upon the importation of such article into this country there shall be levied thereon in addition to the duties otherwise imposed by the act an additional duty equal to the net amount of the bounty enjoyed by such article at exportation. It may therefore be said that every imported article is potentially liable to countervailing duties. If the position of the Government in the present case be correct, it would seem to follow that every protest should specifically negative the application of such duties to the merchandise in question, for if such merchandise be incorrectly classified by the collector, non constat but that a correct classification thereof might bring the merchandise within the provisions for a countervailing duty. It is certain, however, that such a practice has not been followed, nor indeed advocated, in the past.

The conclusion above expressed is sustained by our decision in the recent case of United States v. Kuyper & Co. (6 Ct. Cust. Appls., 142; T. D. 35393). The merchandise in that case was a cereal meal and was assessed with duty at the rate of 15 per cent ad valorem as a nonenumerated manufactured article. The importers claimed free entry for the merchandise as a wheat product under the body of paragraph 644 of the tariff act of 1913. That paragraph and the importers' protest under it are here copied for reference:

644. (Free list.) Wheat, wheat flour, semolina, and other wheat products, not specially provided for in this section: Provided, That wheat shall be subject to a duty of 10 cents per bushel, that wheat flour shall be subject to a duty of 45 cents per barrel of one hundred and ninety-six pounds, and semolina and other products of wheat, not specially provided for in this section, ten per centum ad valorem, when imported directly or indirectly from a country, dependency, or other subdivision of government which imposes a duty on wheat or wheat flour or semolina imported from the United States.

The protest was as follows:

Notice of dissatisfaction is hereby given with, and protest is hereby made against, your ascertainment and liquidation of duties and your decision assessing duty at 15 per cent ad valorem, or other rate or rates, on vegetable albumen or similar merchandise

covered by entries below named. The reasons for objection, under the tariff act of October 3, 1913, are as follows: Said merchandise is covered by, and is free of duty under, paragraph 392 or (as wheat products) paragraph 644.

It will be observed that the foregoing paragraph in general terms admitted wheat products free of duty, but provided, nevertheless, that such products should pay duty at the rate of 10 per cent ad valorem when imported directly or indirectly from a country which imposes a duty on wheat or wheat flour or semolina when imported from the United States. It will also be observed that the protest in the foregoing case simply claimed free entry for the importation under the body of the paragraph, without naming the country from which the merchandise was exported or stating whether the country of exportation did or did not impose a duty upon wheat or wheat products or semolina when imported from the United States, in all of which respects the protest was analogous to that now before the court. The board sustained the protest.

When the foregoing case reached this court upon appeal the Government challenged the sufficiency of the protest upon grounds substantially similar to those presented in behalf of their present contention. This court held in effect that the protest in question was sufficient as a claim for the free entry of the merchandise under the body of the paragraph above copied. It appeared, however, by the concession of the importers in the case that the wheat products in question were imported from Germany, which country then imposed a duty upon wheat when imported thereto from this country. The court therefore held that the importers' claim for the free entry of the merchandise under the body of the paragraph was effectually rebutted by their concession, which established the fact that the merchandise was dutiable under the proviso thereof. The protest, however, contained no claim for the assessment of the merchandise under the proviso, and therefore the court held that it must be overruled.

If it appeared by the present record that the paper in question was imported from a country which imposed an export charge upon the exportation of such paper or the wood pulp or pulp wood necessary for the manufacture thereof, then under the ruling in the Kuyper case, *supra*, the present protest should be overruled, since it claims assessment only under the body of paragraph 322, and not under the proviso thereof. But in the present case, unlike the Kuyper case, there is no evidence of any kind tending to prove that the printing paper in question was imported from a country which imposes an export charge upon either paper, wood pulp, or pulp wood. Therefore, since the merchandise responds to the general provisions of paragraph 322, as is claimed by the importers in their protest, the decision of the board placing it thereunder is *affirmed.*